657 F.2d 146
 AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois
corporation, Plaintiff-Appellee,
v.
The TRANE COMPANY, a Wisconsin corporation, Defendant-Appellant,
and
Employers Mutual Liability Insurance Company of Wisconsin,
et al., Defendants-Appellees.
 No. 80-2747.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 15, 1981.
Decided Aug. 19, 1981.
 
 Christian L. Campbell, Sidley & Austin, Chicago, Ill., for defendant-appellant.
 Eugene O. Gehl, Brynelson, Herrick, Gehl & Bucaida, Madison, Wis., for defendant-appellee.
 Richard P. Ruh, Schlotthauer, Johnson, Mohs, MacDonald & Widder, John F. Jenswold, Jenswold, Studt, Hanson, Clark & Kaufmann, Madison, Wis., for plaintiff-appellee.
 Before BAUER, Circuit Judge, NICHOLS, Judge,* and WOOD, Circuit Judge.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 This is an appeal from the district court's order realigning the parties to a diversity action for declaratory judgment and dismissing the action for want of subject matter jurisdiction. The issue is whether a finding that one of the defendant insurers shared an interest with the plaintiff insurance company in avoiding liability to the defendant insured necessitates realignment. The district judge held that it does and realigned the parties, thereby depriving the court of diversity jurisdiction. We reverse.
 
 I.
 
 2
 Defendant-appellant Trane Company ("Trane") is a Wisconsin corporation that manufactures and sells heat transfer units and air conditioning devices. The appellees are Employers Insurance of Wausau ("Employers"), a Wisconsin corporation; American Motorists Insurance Company ("American Motorists"), an Illinois corporation; St. Paul Fire and Marine Insurance Company ("St. Paul"), a Minnesota corporation; and American Home Assurance Company ("American Home"), a New York corporation. During the periods relevant to this litigation, Trane was insured by Employers for claims up to $300,000; by American Motorists for claims from $300,000 to $5,000,000; by St. Paul for claims from $5,000,000 to $10,000,000; and by American Home for claims from $10,000,000 to $20,000,000.
 
 
 3
 This dispute arises out of Trane's sale of heat exchanger units to several related contractors to whom we refer collectively as "Pritchard." A disagreement arose over the quality of the units, and in May, 1974 Trane brought an action in federal court seeking money due on its contracts. Pritchard counterclaimed, alleging breach of warranty and negligent design. This dispute was settled on April 14, 1978, after extensive discovery by both parties.
 
 
 4
 Prior to this settlement, Trane tendered defense of the Pritchard claims to each of its insurers. Each of the insurers refused, and Trane was thus required to defend the claims through outside counsel. On November 6, 1974, American Motorists filed the instant action seeking a declaration of the rights and liabilities of the four insurers, naming Trane, Pritchard and the other three insurance companies, as defendants. Pritchard moved to dismiss the claim against it, arguing that there was no controversy between it and the plaintiff. The district judge denied the motion, but subsequently dismissed Pritchard for want of personal jurisdiction.
 
 
 5
 Following the settlement with Pritchard in 1978, Trane requested and was granted leave to amend its answer to include counterclaims against American Motorists and cross-claims against the other insurers. These claims sought damages incurred in defending the Pritchard claims, indemnification for amounts paid under the Pritchard claims,[1] and punitive damages. On May 9, 1978, American Home filed a motion asking the district court to realign Employers as a plaintiff and dismiss the action. While a ruling on that motion was pending, all of the parties moved for summary judgment or partial summary judgment. On November 12, 1980, the district judge granted the motion to realign, and dismissed the entire action including Trane's cross-claims against American Home and St. Paul and its counterclaims against American Motorists. This appeal followed.
 
 II.
 
 6
 Where jurisdiction is based on diversity of citizenship, the court may ascertain whether the alignment of the parties as plaintiff and defendant conforms with their true interests in the litigation. Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). Realignment is proper when the court finds that no actual, substantial controversy exists between parties on one side of the dispute and their named opponents, although realignment may destroy diversity and deprive the court of jurisdiction. Id. "Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." Id. at 69, 62 S.Ct. at 17. Metropolis Theatre Co. v. Barkhausen, 170 F.2d 481 (7th Cir. 1948), cert. denied, 336 U.S. 945, 69 S.Ct. 812, 93 L.Ed. 1101 (1949). In conducing its inquiry, the court may look beyond the pleadings and consider the nature of the dispute in order to assess the parties' real interests. Green v. Green, 218 F.2d 130 (7th Cir. 1954). However, the facts which form the basis for realignment must have been in existence at the time the action was commenced. Subsequent events will not deprive the court of its jurisdiction over parties properly aligned. 3A Moore's Federal Practice (2d ed. 1980), P 19.03(1) at 52.
 
 
 7
 In the instant case, the district judge found that the pleadings were of little guidance in determining the interests of the parties and looked instead to American Motorists' brief in support of its motion for summary judgment. In that brief, American Motorists argued that the facts set forth in the Pritchard claims did not constitute an "occurrence" under either its policy or Employers', and therefore neither insurer had a duty to defend Trane.[2] From this, the district judge concluded that "the 'attitudes of the parties' seem insufficiently in conflict to place them on opposite sides of this lawsuit. While it is possible that the two insurers might be in conflict if American Motorists had claimed that the Employers policies covered the Pritchard allegations, that is not the situation presented to this Court.... It would be improper to go further at this point and make findings on the merits to determine whether those attitudes might change sometime in the future." In essence, then, the rationale underlying the district court's order was that because both insurers shared an interest in escaping liability on the Pritchard claims, their interests in the litigation were the same and realignment was proper. We cannot agree.
 
 
 8
 Any two insurers may share an interest in escaping liability to a party they both insure. Thus, in an action such as the one at bar, a defendant insurer might join the plaintiff insurer in a motion to dismiss the insured's counterclaim, where dismissal would also free that defendant from liability. It does not follow that the insurers' interests are harmonious.
 
 
 9
 Reference to the pleadings and the terms of the insurers' policies discloses a substantial conflict between American Motorists and Employers on the duty to defend, notwithstanding their common interest in avoiding liability. Because Employers is the underlying insurer, American Motorists would benefit from a holding that Employers had a duty to defend Trane. Conversely, if Employers were found not to be liable, American Motorists would then have the burden of proving that it had no duty to defend Trane. That American Motorists would benefit from a holding adverse to Employers is a fact which has been in existence since the beginning of this lawsuit, and is not diminished by the former's urgings that neither it nor Employers has a duty to defend.
 
 
 10
 The cases cited by the district court, Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664 (1918); Green v. Green, 218 F.2d 130 (7th Cir. 1954), do not support the realignment ordered below. The Green and Sutton cases stand for the proposition that a party's interest may be determined by his or her "attitude and conduct towards the controversy." 218 F.2d at 144. It does not follow that a court must realign a party whenever it shares an interest with an opposing party in being dismissed from the action, especially where a denial of the motion to dismiss could put the parties in open conflict. In Smith, the court held that the issue of the propriety of alignment should be resolved as a preliminary matter, before reaching the merits of the case. If anything, this suggests that the district judge's reliance on the plaintiff's brief in support of its motion for summary judgment was misplaced, since an actual and substantial conflict among the insurers was apparent from the outset of this action. To focus solely on a position taken well after commencement of the proceedings distorted the true nature of the litigation.[3]
 
 
 11
 The propriety of alignment is a matter not determined by mechanical rules, but rather by pragmatic review of the principal purpose of the action and the controlling matter in dispute. Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). In cases such as the one at bar, it is the points of substantial antagonism, not agreement, on which the realignment question must turn. See, e. g., Reed v. Robilio, 376 F.2d 392 (6th Cir. 1967); C. Y. Thomason v. Lumbermen's Mutual Casualty Co., 183 F.2d 729 (4th Cir. 1950); Till v. Hartford Accident and Indemnity Co., 124 F.2d 405 (10th Cir. 1942). Thus, contrary to Employers' assertion, a mere mutuality of interest in escaping liability is not of itself sufficient to justify realignment. Realignment is proper where there is no actual, substantial conflict between the parties that would justify placing them on opposite sides of the lawsuit. Trane asserts, and appellees do not dispute, that a finding that Employers had no duty to defend could put the defense burden squarely on American Motorists. Conversely, as noted, a finding that Employers was liable would reduce or eliminate American Motorists' liability. Accordingly, we find that a substantial controversy existed between Employers and American Motorists, and therefore the realignment ordered below was improper.[4]
 
 
 12
 The order of the district court is REVERSED.
 
 
 
 *
 The Honorable Philip Nichols, Jr., Judge of the United States Court of Claims, is sitting by designation
 
 
 [1]
 The settlement amount was not before the district judge
 
 
 [2]
 Under Employers' policies Nos. 0121-00-060762 and 0123-00-060762 (effective June 1, 1971-June 1, 1973),
 property damage means injury to or destruction of tangible property;
 occurrence means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
 Under Employers' Policy No. 0124-00-060-0762 (effective June 1, 1973-June 1, 1974),
 "property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;
 "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in injury or property damage neither expected nor intended from the standpoint of the insured.
 Under American Motorists' Policy No. ICP-904-10 (effective July 1, 1971-July 1, 1974),
 "property damage" means physical injury to or destruction of tangible property (other than property owned by the named insured) including the loss of use thereof;
 "occurrence" means an accident, or a continuous or repeated exposure to conditions which results, during the policy period, in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured, except that assault and battery committed by the insured for the purpose of protecting persons or property shall be deemed an occurrence.
 Trane argues that the broader definition of "property damage" in the American Motorists policy creates a greater potential liability on the part of American Motorists. Trane also points to Exclusion (M) of the Employers policy which, it argues, formed the basis for Employers' rejection of its tender for defense. Under that exclusion, the policy does not apply
 to loss of tangible property which has not been physically injured or destroyed resulting from (1) the delay in or lack of performance by or on behalf of the insured of any contract or agreement, or (2) the failure of the named insured's product or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured.
 Trane argues that if this exclusion were applicable to the Pritchard claims, the Employers policy would not afford coverage and American Motorists would be exposed to a greater potential liability. If Employers properly rejected tender, and if American Motorists' policy did cover the Pritchard claims, then American Motorists had the duty to defend Trane. Employers, as the underlying insurer, came within the terms of Endorsement No. 167 of American Motorists' policy:
 With respect to any occurrence not covered by (1) the underlying policy(ies) listed in Declaration 7 Schedule of Underlying Insurance, or (2) any other underlying insurance available to the insured and provided such occurrence is covered by the terms and conditions of this policy, except for the amount of the retained limit stated in Declaration 5, the company shall:
 (a) Defend any suit seeking damages because of personal injury, property damage, or advertising liability....
 
 
 [3]
 A court may, of course, inquire into its jurisdiction at any stage of the proceedings. Page v. Wright, 116 F.2d 449 (7th Cir. 1940). The scope of this inquiry is limited to facts in existence at the time the action was commenced. Scott v. Fancher, 369 F.2d 842 (5th Cir. 1966). Employers argue that the district judge did not err by considering the plaintiff's brief in support of its motion for summary judgment, since the judge may look beyond the complaint and answer to "subsequent pleadings and proceedings in the case, as well as the attitude and conduct of (the parties) toward the controversy." Green v. Green, 218 F.2d at 144. Subsequent proceedings and pleadings are appropriate for consideration insofar as they shed light on the facts as they existed at the outset of the litigation and on the actual interests of the parties. Here, however, the effect of relying solely on the plaintiff's argument that neither it nor Employers was liable was to focus on a single common interest and ignore the points of conflict
 Nonetheless, we do not accept Trane's argument that the positions taken by Employers and American Motorists in their briefs in support of motions for summary judgment constituted "new facts" not in existence at the time this action was commenced. By contending that the insurers all sought to escape liability to Trane, American Motorists and Employers merely emphasized an aspect of the litigation that was apparent at its inception.
 
 
 [4]
 On this appeal, Trane also challenges the propriety of the district court's dismissal of its counterclaims against American Motorists and its cross-claims against St. Paul and American Home. Because the dismissal of these claims was contingent upon the realignment of Employers as a party plaintiff, we need not reach this issue